[L.A. No. 30329. In Bank. Nov. 18, 1974.]

EMPIRE WEST, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA GAS COMPANY,
Defendant and Respondent.

## COUNSEL

Morton M. Gerson for Plaintiff and Appellant.

Overton, Lyman & Prince and John D. McCurdy for Defendant and Respondent.

## OPINION

**BURKE, J.**—Plaintiff appeals from a summary judgment entered in favor of defendant, Southern California Gas Company. (Code Civ. Proc., § 437c.) The only issue is whether plaintiff's asserted cause of action for fraudulent misrepresentation constitutes an attempt to secure preferential rate treatment in violation of Public Utilities Code section 532.[1] We have

---

[1]Section 532 reads in part: ". . . no public utility shall charge, or receive a different compensation for any product or commodity furnished or to be furnished . . . than the rates . . . specified in its schedules on file and in effect at the time . . . nor shall any such public utility refund or remit, directly or indirectly, in any manner or by any device, any portion of the rates . . . ." Unless otherwise specified all code sections are in reference to the Public Utilities Code.

concluded that section 532 is inapplicable here and that defendant's motion for summary judgment should have been denied.

■ We have summarized the well-established rules governing summary judgment procedure as follows: " 'The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ■ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953].)

With these rules in mind, we turn to the facts of the case as set forth in the pleadings and affidavits. Plaintiff advised defendant utility company that it planned to build a 108-unit apartment complex, and defendant volunteered to assist plaintiff during the planning and construction of the project regarding any problems which might arise involving the use of gas. Defendant also told plaintiff that it would have its engineers prepare a cost analysis of the operating cost of a central gas heating and cooling system which could be used by plaintiff in planning the project. Defendant presented its cost analysis to plaintiff, representing that the cost of operating a central gas heating and cooling system plus gas water heating would be approximately $12,000 per year. In reliance upon these representations, plaintiff equipped its newly constructed complex with a gas system. Subsequently, plaintiff found that the actual operating cost of the system was $8,000 more per year than represented.

According to plaintiff, the gas company knew it did not have accurate data upon which to base its analysis and, therefore, knew that it could not represent truthfully the amount of gas which would be consumed. However, despite this knowledge, the gas company held out its estimates as true and accurate, in order to induce plaintiff to buy and install the

gas system. Plaintiff allegedly had no experience in the area of gas consumption and its cost; it relied totally on defendant's expertise, and the information it supplied, in planning the project. There are no filed and published gas consumption figures to which plaintiff could have looked for an accurate cost analysis. Had it known the gas company's figures were wrong, plaintiff would not have planned, developed and constructed the building as it did. Instead plaintiff would have installed an electric powered heating and cooling unit. The cost of installing such a unit would have been $27,000 less than that expended for the gas system.

As previously stated, the sole issue before this court is whether plaintiff's cause of action constitutes, in effect, an attempt to secure preferential rate treatment in contravention of section 532. The trial court held that it did and therefore granted defendant's motion for summary judgment. We hold that plaintiff's cause of action does not assert a claim for preferential rate treatment and, accordingly, that summary judgment was improperly granted.

Section 532 forbids any utility from refunding "directly or indirectly, in any manner or by any device" the scheduled charges for its services. In addition, a public utility "cannot by contract, conduct, estoppel, waiver, directly or indirectly increase or decrease the rate as published in the tariff . . . ." (*Transmix Corp. v Southern Pac. Co.*, 187 Cal.App.2d 257, 264 [9 Cal.Rptr. 714]; accord *South Tahoe Gas Co.* v. *Hofmann Land Improvement Co.*, 25 Cal.App.3d 750, 760 [102 Cal.Rptr. 286].) Scheduled rates must be inflexibly enforced in order to maintain equality for all customers and to prevent collusion which otherwise might be easily and effectively disguised. (*R. E. Tharp, Inc.* v. *Miller Hay Co.*, 261 Cal.App.2d 81 [67 Cal.Rptr. 854]; *People* ex rel. *Public Util. Com.* v. *Ryerson*, 241 Cal.App.2d 115, 120-121 [50 Cal.Rptr. 246].) Therefore, as a general rule, utility customers cannot recover damages which are tantamount to a preferential rate reduction even though the utility may have *intentionally* misquoted the applicable rate. (See *Transmix Corp.* v. *Southern Pac. Co.*, *supra*, p. 265; Annot. 88 A.L.R.2d 1375, 1387; 13 Am.Jur.2d, Carriers, § 108, p. 650; *United States* v. *Associated Air Transport, Inc.* 275 F.2d 827, 833.)

These principles are most commonly applied in cases which involve mistaken rate quotations whereby the customer is quoted a lower rate than set forth in the published tariff. Upon discovery of the error, the utility may initiate an action against the customer to recover the full legal charges for the service, as filed and published in rate schedules. (See, e.g., *Gardner* v. *Basich Bros. Construction Co.*, 44 Cal.2d 191 [281 P.2d 521];

*R. E. Tharp, Inc.* v. *Miller Hay Co., supra,* 261 Cal.App.2d 81.) In granting recovery to the utility, the courts usually rely on the fact that the rates have been filed and published and have thereby become part of the contract between the utility and the customer. (*Gardner* v. *Basich Bros. Construction Co., supra,* p. 193; *Transmix Corp.* v. *Southern Pac. Co., supra,* 187 Cal.App.2d 257, 265.) Under these circumstances the customer is charged with knowledge of the contents of the published rate schedules and, therefore, may not justifiably rely on misrepresentations regarding rates for utility service. (See *Transmix Corp.* v. *Southern Pac. Co., supra,* p. 265; 13 Am.Jur.2d, *supra,* § 108, p. 649; Annot. 88 A.L.R.2d, *supra,* 1375.)

By contrast, the instant case does not involve a dispute over the *rate* which plaintiff must pay defendant for gas service. Plaintiff has not asserted that defendant misrepresented the legal rate set forth in a published tariff, nor does plaintiff seek a reduced rate, rebate or refund. Instead, plaintiff contends that defendant misrepresented the *quantity* of gas which the proposed building project would consume, resulting in a substantial understatement of plaintiff's total cost for gas service. Plaintiff seeks to recover the actual damages incurred by reason of defendant's fraud. Unlike the rate cases discussed above, the alleged misrepresentation in the instant case did not concern a published rate of which plaintiff was deemed to have knowledge. According to plaintiff, only defendant had the knowledge and expertise necessary to calculate the probable quantity of gas which would be consumed by the project, and the cost to plaintiff for consuming that amount of gas.

Although there is some contrary authority (see 13 Am.Jur.2d, *supra,* § 108, p. 649; *United States* v. *Associated Air Transport, Inc., supra,* 275 F.2d 827), the better view appears to be that a carrier will be held accountable for misrepresentations regarding a fact not contained in the published tariff, and thus not subject to verification by the shipper (see *United States* v. *Mason & Dixon Lines,* 222 F.2d 646; Annot. 88 A.L.R.2d, *supra,* 1387). In any event, whatever may be the rule with respect to carriers and shippers, we think that a utility customer who has been actually damaged[2]

---

[2] " 'Fraud without damage furnishes no ground for action, nor is fraud without damage a defense.' " (*South Tahoe Gas Co.* v. *Hofmann Land Improvement Co., supra,* 25 Cal.App.3d 750, 765, quoting from an earlier case.) The *South Tahoe* case suggests that a utility may be accountable for misrepresenting factual matters other than information concerning the legal published rates. The court reasoned, however, that a victim of a rate misquotation ordinarily would suffer no damages thereby, since he must in any event pay the legal rate regardless of his expectations. Indeed, the general rule is that one defrauded in a sales transaction may not recover the difference

by a utility's fraudulent misrepresentations regarding matters not contained in the published tariffs should be entitled to bring suit to recover those damages.

Indeed, California statutes appear to authorize the filing of plaintiff's action in this case. Section 1709 of the Civil Code provides that "one who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (See also Pen. Code, § 484, subd. (a).) And section 2106[3] of the Public Utilities Code permits the filing of damage suits against public utilities for the commission of any act "prohibited or declared unlawful," under the laws of this state. Although this court has recognized that damage suits brought against a utility under section 2106 must not be used as a device to avoid or interfere with established regulations or practices of the Public Utilities Commission (*Waters* v. *Pacific Telephone Co.,* 12 Cal.3d 1 [114 Cal.Rptr. 753, 523 P.2d 1161]), the commission has expressed no policy against suits of the nature involved herein. To the contrary, a recent commission decision indicates that fraudulent statements made by a utility to a prospective customer to induce his business are properly actionable in a court of law.[4]

We conclude that plaintiff's action was not barred by the provisions of section 532 of the Public Utilities Code. In sum, plaintiff's suit seeks to recover the actual damages incurred in reliance upon defendant's alleged

---

between the actual value of the item and the value as falsely represented; ordinarily damages for fraud are limited to out-of-pocket loss. (Civ. Code, § 3343, subd. (b) (1); see *Gagne* v. *Bertran,* 43 Cal.2d 481, 490-492 [275 P.2d 15]; cf. *Gonsalves* v. *Hodgson,* 38 Cal.2d 91, 101 [237 P.2d 656].)

It is true that plaintiff's complaint appears to request an amount of damages which may exceed its out-of-pocket loss. Yet, regardless of the theory of recovery asserted in its complaint, plaintiff should be given the opportunity of proving at trial that it suffered actual damages by reason of defendant's alleged fraud, having spent substantially more money on the heating system than it would have spent had defendant not misrepresented the annual cost thereof. Indeed, defendant conceded as much at oral argument in this case.

[3]Section 2106 states in pertinent part: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. . . ."

[4]See 71 Cal. P.U.C. 229, 237-238, and example 3, involving the limitation of liability of telephone utilities. As the commission explains, it is clear that ordinary rules permitting the limitation of liability do not apply to situations involving fraud or wilful misconduct.

fraud; the recovery of actual damages could not possibly constitute an unlawful refund or rebate under section 532.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Clark, J., concurred.

Mosk, J., concurred in the judgment.