[No. A036046. First Dist., Div. Three. Mar. 31, 1988.]

ROBERT A. LEVY, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts VII and VIII.

■■

## COUNSEL

Robert A. Levy, in pro. per., for Plaintiff and Appellant.

Michael J. Loeb, James C. Martin, Kathy M. Banke and Crosby, Heafey, Roach & May for Defendants and Respondents.

## OPINION

**MERRILL, J.**—Appellant Robert A. Levy filed the instant employment discrimination action against the Regents of the University of California and some of its employees under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and the federal Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.). Appellant claims discrimination in hiring based on age. A summary judgment was entered against appellant by the trial court on respondents' motion. Thereafter, appellant's motions for reconsideration and a new trial were denied. ■ ■ ■ ■ Appellant appeals from the summary judgment and the orders denying his motions for reconsideration and a new trial.[1] We affirm.

### I

Appellant was born in El Paso, Texas, on November 15, 1926. He received a Ph.D. in physics in 1955 from the University of California at Berkeley. After a series of jobs in the private sector, he secured a position as associate professor of physics at the University of Cincinnati from 1963 to 1969. However, upon being denied tenure in 1969, he left the university.

Three years before leaving the university, and shortly after turning 40, appellant began an ongoing effort to obtain a faculty position at another educational institution. His search included various campuses of the

---

[1] The order denying appellant's motion for a new trial is not an appealable order. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 92, p. 113.)

University of California. However, his efforts were without success. From the time he left the University of Cincinnati in 1969 to the time he filed the instant lawsuit in 1982, appellant remained unemployed in his chosen field.

The events giving rise to the litigation herein occurred in 1980 and 1981. In the spring of 1980, approximately 11 years after appellant left the University of Cincinnati, appellant's daughter, then a student at the University of California, Davis campus, approached the chairman of that school's physics department, Dr. Douglas McColm, and asked him to consider appellant for employment. Due to this request, McColm telephoned appellant who was living in Texas at the time, and discussed temporary lecturer positions with him. The qualifications for a temporary lecturer position included an advanced degree in physics, teaching experience and, usually, immediate availability. McColm explained the nature of such positions, that they were nonfaculty positions lasting only one quarter, that they came open on very short notice and were, thus, usually offered to members of the local physics community in Davis who were capable of going to work on short notice. Appellant indicated that he "might" be interested in such a position whereupon McColm invited him to give a one-hour lecture on campus the following month, a time when appellant planned to be on campus anyway to attend his son's graduation.

On the day of the lecture, in June 1980, appellant met with Dr. William Knox, who was about to succeed McColm as chairman of the physics department at Davis. Knox informed appellant that the earliest a temporary lecturer position would become available would probably be the winter quarter commencing in January 1981. According to Knox, he asked appellant if he would be interested in such a position on short notice and appellant, once again, indicated that he "might" be interested. Appellant claims that Knox "promised" him the position on the spot, before appellant had given his lecture and prior to Knox becoming chairman of the department.

Appellant's lecture apparently consisted of a review of two articles he had published 20 years earlier plus an informal theoretical analysis of a mileage device which he did in 1977. Neither Knox nor McColm were impressed by the lecture according to their later statements.

Following appellant's talk, appellant did not personally follow up on the temporary lecturer position which had been mentioned by Knox. Accordingly, Knox said he forgot about appellant as a possible candidate and when in November or December 1980 a sudden need arose for a temporary lecturer for the January 1981 quarter, he considered only applicants in the local physics community. Knox attached little importance to the fact that

appellant gave a guest lecture in the physics department as such talks by visitors took place, on an average, three times a week. On December 22, Knox recommended that the position be filled by 30-year-old Michael Madison who had received his master's degree in physics from Davis and was a doctoral candidate in the department. Madison had also been a teaching assistant at the university the previous year and had received outstanding reviews on his skills as a lecturer.

In January 1981, appellant personally contacted Dr. Knox about the temporary lecturer position at which time he was informed that the position had been filled. Failing to get the temporary lecturer position at Davis, appellant continued to pursue other positions at the University of California. In May 1981, appellant saw an advertisement in Science magazine advertising the position of deputy director for the university-wide energy research group, headquartered in Berkeley. Qualifications noted by the advertisement included a Ph.D. or "equivalent" plus substantial research experience in an energy-related field. Additionally, the advertisement indicated that experience in the management of research programs and with information systems "is very desirable." The notice instructed potential applicants to send curriculum vitae and three letters of reference by June 1, 1981, to the university in care of Professor Jack M. Hollander. Appellant responded to the ad with a resume and letter wherein he stated that he would be unable to supply letters of recommendation by the June 1 deadline "primarily because I have been unemployed for the last dozen years and most of the people from whom I would ask letters of recommendation are retired." Appellant said he would comply with the "requirement" for letters "if you wish to consider my application."

Eighteen other individuals besides appellant applied for the deputy director position. The applications were reviewed by Dr. Hollander who ranked the applicants in five categories ranging from very strong to very weak. The three top ranked candidates were: Dr. Larry Icerman, Dr. Harvey Leff, and Dr. Michael Lederer. Icerman's qualifications included 14 years of continuous professional academic experience including extensive experience in the field of solar and geothermal energy, co-authorship of 3 textbooks and authorship or co-authorship of 56 notes, papers and reports dealing primarily with energy resources. He currently held the position of director of the New Mexico Energy Institute. Dr. Leff, meanwhile, had 18 years of continuous experience in physics and had authored or co-authored 5 energy-related works. Finally, Dr. Michael Lederer who was temporarily filling the deputy director slot while the application and selection process was pending, had 20 years of professional experience nearly all at the Lawrence Berkeley Laboratory, including experience as the department head for

information and data analysis. Additionally, Lederer had authored or co-authored 31 publications. Of the five categories of candidates, appellant was ranked in the lowest category.

Dr. Hollander eventually recommended 43-year-old Dr. Lederer for the position. Dr. Hollander said that in addition to Lederer's superior credentials, he was impressed with the applicant's work as acting deputy director for the group. Hollander's recommendation was approved.

On June 19, 1981, appellant filed the first of two administrative complaints with the California Department of Fair Employment and Housing (DFEH). In this initial complaint, appellant alleged that the physics department at Davis had discriminated against him on the basis of age when it failed to hire him as a nonfaculty temporary lecturer for the winter quarter in January of 1981. Appellant based this charge on an alleged promise by both Drs. McColm and Knox to hire him for the winter quarter and on an earlier letter he received in 1979 from the statewide assistant vice president for academic personnel, Edward Blakely, wherein it was allegedly stated, "Apparently there is a real glut of *young* PhD. physicists and the competition for every post is intense." (Italics added.) Following an investigation into these allegations, the department advised appellant by letter that it would not be pursuing the matter because there was "[i]nsufficient evidence to prove a violation of the statute."

Appellant filed a second complaint with the DFEH on March 22, 1982, alleging that the University of California had discriminated against him on the basis of age by failing to hire him for the deputy director position. Appellant based this complaint on the fact that Dr. Hollander had not responded to his application and the fact that he had been unsuccessful in seeking employment at the university for the past 15 years, "since I first made application in 1966, just after my 40th birthday." Once again, the department found insufficient evidence to support the charge and advised appellant accordingly.[2]

Following the DFEH's action on both complaints, appellant filed the instant lawsuit alleging discrimination in hiring based on age in violation of the FEHA (Gov. Code, § 12900 et seq.[3]) and the federal ADEA (29 U.S.C.

---

[2] Complaints lodged with the Equal Employment Opportunity Commission (EEOC), the federal agency designated to handle ADEA claims, were also apparently rejected by that agency.

[3] Former Labor Code section 1420.1 provided: "It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." Labor Code sections 1410 through 1433, the Fair Employment

§ 621 et seq.[4] ). The suit was filed against the Regents of the University of California, the University of California at Davis, the University of California at Berkeley, Drs. McColm, Knox and Hollander, and Edward Blakely. Service of the complaint on respondents, however, did not take place until two years later. This appeal followed the granting of respondents' motion for summary judgment.

## II

The first issue on appeal concerns the propriety of the trial court's action in granting respondents' motion for summary judgment. Summary judgment is authorized by Code of Civil Procedure section 437c, subdivision (c), which provides, in relevant part, that a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The basis for review of a summary judgment has been stated by our Supreme Court as follows: " ' "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ■ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." ' [Citation.]" (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31].)

Practices Act, were repealed by Statutes 1980, chapter 992, section 11, page 3166, and incorporated into the FEHA. They are now found in Government Code section 12900 et seq.

[4]The pertinent part of the ADEA provides: "It shall be unlawful for an employer—[¶] (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . ." (29 U.S.C. § 623(a).) State courts have jurisdiction over private-sector ADEA cases. (*Lehman* v. *Nakshian* (1981) 453 U.S. 156, 164, fn. 12 [69 L.Ed.2d 548, 101 S.Ct. 2698].)

## III

To guide us in our analysis of appellant's claims under both the FEHA and the ADEA, we look at federal law and how claims under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e to 2000e-17) are broached. (See *Ibarbia* v. *Regents of University of California* (1987) 191 Cal.App.3d 1318, 1326-1327 [237 Cal.Rptr. 92], hg. den. July 29, 1987; and *Williams* v. *Edward Apffels Coffee Co.* (9th Cir. 1986) 792 F.2d 1482, 1484.) ■ Claims of employment discrimination because of an individual's race, color, religion, sex, or national origin may be pursued under title VII in one of two ways: "An individual may allege that he has been subjected to 'disparate treatment' because of his [protected status], or that he has been the victim of a facially neutral practice having a 'disparate impact' on [those sharing the same protected status]." (*Furnco Construction Corp.* v. *Waters* (1978) 438 U.S. 567, 582 [57 L.Ed.2d 957, 970, 98 S.Ct. 2943].) ■ To overcome respondents' motion for summary judgment, under either theory, appellant has to offer facts sufficient to establish a prima facie case. (*McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792, 802 [36 L.Ed.2d 668, 677, 93 S.Ct. 1817]; *Griggs* v. *Duke Power Co.* (1971) 401 U.S. 424, 431 [28 L.Ed.2d 158, 164, 91 S.Ct. 849].)

■ To establish a prima facie case of employment discrimination through disparate treatment under title VII, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." (*Texas Dept. of Community Affairs* v. *Burdine* (1981) 450 U.S. 248, 253, fn. omitted [67 L.Ed.2d 207, 215, 101 S.Ct. 1089].) A common way to establish this inference is to show that the four requirements set forth in *McDonnell Douglas* are met: (1) that the plaintiff belongs to a protected class, (2) that the plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) that, despite being qualified, the plaintiff was rejected, and (4) that, after the plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications. (*McDonnell Douglas Corp.* v. *Green, supra,* 411 U.S. at p. 802 [36 L.Ed.2d at p. 677].)

■ The elements of a prima facie case under the ADEA are similar to those set forth in *McDonnell Douglas* for title VII cases. Under the ADEA, a plaintiff must demonstrate that (1) he was a member of the protected age group of individuals between 40 and 70 years of age, (2) he applied for but did not receive the position in question, (3) another person of similar qualifications generally outside the protected age group, received the particular position, and (4) the claimant was qualified to fill the position he sought.

(*Fugate* v. *Allied Corp.* (N.D.Ill. 1984) 582 F.Supp. 780, 783; see also *Sakellar* v. *Lockheed Missiles and Space Co.* (9th Cir. 1985) 765 F.2d 1453, 1455.)

■ "If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." (*Lowe* v. *City of Monrovia* (9th Cir. 1985) 775 F.2d 998, 1005.)

■ To establish a prima facie case of employment discrimination through disparate impact, on the other hand, a plaintiff need not prove intentional discrimination. However, he must prove circumstances raising an inference of discriminatory impact, plus the discriminatory impact at issue. "This is usually done by establishing 'that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants.' [Citation.]" (*Lowe* v. *City of Monrovia, supra,* 775 F.2d at p. 1004.) "[T]he requirements a disparate impact plaintiff must meet 'are in some respects more exacting than those of a disparate treatment case. . . .' [Citations.]" (*Ibid.*)

## IV

■ In the instant case, appellant meets some of the pertinent elements for establishing a prima facie case of employment discrimination through disparate treatment under the ADEA. At the time he applied for both the temporary lecturer position and the deputy director position, he was over 40 and thus, belonged to a protected class. Additionally, the person hired for the temporary lecturer position was not only younger than appellant but generally outside the protected age group. Nevertheless, it is clear that appellant falls way short of meeting all of the necessary elements.

As to the temporary lecturer position at Davis, it cannot be said, based on the undisputed facts of the case, that appellant effectively "applied" for the position. In June 1980, when appellant gave his informal lecture on campus at the request of the chairman of the physics department, appellant was told that there were no temporary lecturer openings at the time and that the earliest such opening would likely occur in the upcoming winter quarter which would begin January 1981. Appellant was also told how these open-

ings characteristically came up—i.e., that they came up on "very short notice" and usually were offered to members of the local physics community who were capable of going to work on such short notice. Knowing these facts, appellant nevertheless failed to personally follow up on this position until January 1981, an untimely action by anyone's definition. By January 1981, the opening had already been filled.

The importance of completing the application process in order to establish a prima facie case of discrimination by disparate treatment was noted by this court recently in the case *Ibarbia* v. *Regents of University of California, supra,* 191 Cal.App.3d 1318. In that case, Ibarbia, a Filipino-American, applied for the position of farm advisor which had been advertised by the University of California Division of Agricultural Services. Upon learning that he had not been chosen as one of the finalists, Ibarbia wrote the university personnel administrator, informing him that he viewed the rejection of his application as another instance of the university's continuing discrimination against Filipino-Americans. Based on the letter, the university launched an investigation wherein it was discovered that the criteria used by the committee in charge of screening the applications differed from the qualifications which had been listed in the job announcement. Based on this discrepancy, the university contacted Ibarbia by phone, offering him an interview for the position. Ibarbia, however, declined the interview in view of the fact that he had filed a complaint with the EEOC and, consequently, did not believe the interview would be fair.

Ibarbia then brought suit against the university under the FEHA alleging discrimination based on national origin. A summary judgment was granted by the trial court and upheld by this court which found that since Ibarbia had declined the proffered interview, he had failed to complete the application process and "to make the required showing as a matter of law." (*Ibarbia* v. *Regents of University of California, supra,* 191 Cal.App.3d at p. 1329.) Ibarbia's claim that the interview was merely a pretext and that the selection of a candidate had already taken place was determined to be nonconsequential inasmuch as the claim was "purely speculative and unsupported by the evidence." (*Ibid.*)

As in *Ibarbia,* appellant here has failed to establish a prima facie case of discrimination by disparate treatment relative to the temporary lecturer position at Davis, as a matter of law, because he did not complete the application process by following up on his initial inquiry. There is nothing in the record to indicate that he ever informed the university that he had

made a definitive decision that he wished to be appointed to the position. Having stated that he "might" be interested in the position, appellant failed to communicate with the university, either orally or in writing, during the critical months leading up to the winter quarter. An employer does not have an obligation to give notice of an opening to all potential applicants who have expressed an interest in the position.

Nor does the fact that there was evidence that appellant's daughter dropped by the department in December 1980 to remind Dr. Knox of appellant's interest, alter our view. First of all, it can hardly be argued that her informal visit was tantamount to a completion of the application process by appellant. Furthermore, it would appear from the record that even his daughter's visit was untimely. Appellant's daughter visited the department prior to leaving campus for Christmas vacation at a time when Dr. Knox had already reviewed local candidates. The selection of the temporary lecturer was made on December 22.

Finally, as in *Ibarbia,* appellant's attempt at overcoming the weakness of his showing by alleging its use by the university as a mere pretext to camouflage its real discriminatory motive in not hiring him, must fail as well. Allegations made by appellant in this regard—i.e., that the person hired for the position was less qualified than he, that during the period in question the university had more than one temporary lecturer opening—are purely speculative and not borne out by the evidence.

Appellant's claims of discrimination by disparate treatment relative to the deputy director position at Berkeley must fail on the same basis. Appellant did not complete the application process relative to this position. The university's notice advertising the position specifically instructed potential applicants to make application by sending curriculum vitae and three letters of reference. Appellant submitted his resume but did not include any letters of reference. Nor was it his intention to supply them at a later time absent another request by the university. Under these circumstances, appellant has failed to establish a prima facie case of employment discrimination as a matter of law.

Neither does the fact that the university considered appellant's application in spite of these deficiencies, lend support to his position. In establishing a prima facie case of employment discrimination, it is incumbent upon appellant to establish that he did everything that was required of him as an

applicant and met all the qualifications of the position in question, but still was not hired. Only in this way is the inference of discrimination raised. When appellant fails to meet this burden, as here, discrimination cannot be inferred because there are other equally, if not more, plausible bases for his rejection. The fact that the employer nevertheless decides to review his application, does not cure the weakness of appellant's case.

Moreover, relative to the deputy director position, in addition to failing to establish that he had effectively applied for the position, appellant has also failed to establish (1) that he was, in fact, qualified for the position, and (2) that another person of similar qualifications outside the protected age group received the position. Accordingly, he is unable to claim a prima facie case of employment discrimination on this basis. Among the qualifications for the deputy director position, "experience in management of research programs and with information systems" was listed as "very desirable." Nowhere in appellant's resume is such experience noted. Forty-three-year-old Dr. Lederer who was eventually chosen for the position, on the other hand, had experience as department head of information and data analysis at the Lawrence Berkeley Laboratory as well as temporarily filling the deputy director slot itself. In addition, it is beyond question that Dr. Lederer's qualifications were superior in all respects to those of appellant.

For these reasons, we find that appellant has not established a prima facie case of employment discrimination by disparate treatment as to either the temporary lecturer position at Davis or the deputy director position for the university-wide energy research group.

## V

Nor has appellant succeeded in presenting a prima facie case of employment discrimination under the theory of "disparate impact" with respect to either the temporary lecturer position or the deputy director position. It will be remembered that in order to make the required showing, appellant had to not only prove circumstances raising an inference of discriminatory impact, he also had to prove the discriminatory impact at issue. (*Lowe* v. *City of Monrovia, supra,* 775 F.2d at p. 1004.)

Throughout his papers, appellant implies that the university practices a discriminatory policy in its hiring procedures, favoring younger applicants

over older applicants. However, appellant provides no evidence, either direct or indirect, to support such an allegation. What evidence there is, in fact, suggests otherwise. Appellant, for instance, provides statistical data on the ages of temporary lecturers hired by the physics department at the University of California at Davis between 1975 and 1982, plus age data on the academic faculty hired by that department between 1979 and 1981, and finally, age data relative to all professors and permanent lecturers at both the Davis and Berkeley campuses as of 1982. Nothing in this data points to the kind of discriminatory policy alleged by appellant.

## VI

The approach followed by the California Fair Employment and Housing Commission (Commission) which hears FEHA cases, resembles the federal approach. It too has adopted the disparate treatment/disparate impact theories of employment discrimination. The primary difference is one that does not concern us in our case. Under the Commission's approach, in order to establish a prima facie case of disparate treatment, a complainant must show that a causal connection exists between his protected status and the adverse employment decision. "The Commission has stated that this causal connection or nexus can be proved by establishing facts that create an inference of discrimination, as in *McDonnell Douglas Corp.* v. *Green,* or by a showing of actual bias against complainant's group, or by other competent evidence. [¶] . . . Thus the Commission's position is that *McDonnell Douglas Corp.* v. *Green* sets out but one way of raising an inference of discrimination." (Gelb & Frankfurt, *California's Fair Employment and Housing Act: A Viable State Remedy for Employment Discrimination* (1983) 34 Hastings L.J. 1055, 1070, fns. omitted.)

In the instant case, it is apparent that appellant has failed to make a sufficient showing of disparate treatment or disparate impact under either the federal approach or the one adopted by the Commission. As to both of the positions at issue, appellant failed to complete the application process. As to the deputy director position, appellant was lacking in qualifications. Nor is it possible, as a result, for him to establish a causal connection between his protected status and the adverse employment decisions.

## VII, VIII*

. . . . . . . . . . . . . . . . . . . . . .

## IX

Summary judgment is affirmed as is the trial court's order denying appellant's motion for reconsideration.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied April 29, 1988, and appellant's petition for review by the Supreme Court was denied June 22, 1988.

---

*Parts VII and VIII of this opinion are not certified for publication. (See fn., *ante,* p. 1334.)