[Civ. No. 18679. Second Dist., Div. One. May 19, 1952.]

ASSOCIATED TELEPHONE COMPANY, LTD., Appellant, v. ALLEN GREENMAN et al., Respondents.

Hector P. Baida for Appellant.

Chase, Rotchford, Downen & Drukker, Richard T. Drukker, Otto M. Kaus, Merrill L. Granger and Donn B. Downen for Respondents.

DORAN, J.—Two appeals are involved; one from an order and judgment of nonsuit in favor of respondent Greenman; the other from a judgment on a verdict in favor of respondent V. M. Pilgrim. The action herein seeks damages arising out of the operation of a bulldozer by Greenman which injured telephone conduit and cables buried in the earth and located on an easement in Uplifters Ranch Subdivision.

The case was tried before a jury upon a first amended complaint which in general terms alleges negligence causing damage in the amount of $4,250.12. On January 12, 1951, five days before the date of trial, plaintiff-appellant had noticed for hearing a motion seeking to add a new and additional cause of action on the theory of trespass. The trial court refused to permit the amendment; a nonsuit was granted as to respondent Greenman, and the jury returned a verdict in favor of respondent Pilgrim.

Respondent Greenman's brief states: ''For many years prior to February 11, 1948, (the alleged date of damage), appellant's conduits and cables were maintained in a generally easterly and westerly direction across said Lot 16. . . . Before the completion of the subdivision the owners . . . executed and delivered a grant of an easement to the appellant over an area approximately 5 feet on either side of the center of the conduits for the length thereof. This grant of easement, recorded December 8, 1947, provided that appellant might construct, maintain and operate a telephone line, with . . . conduits, cables and appurtenances . . . in, over, under, along and across said easement.''

In respondent Greenman's brief, attention is called to the fact that the above mentioned easement ''specified neither the lateral nor vertical location of the area''; that the conduit had been laid 21 years before and was approaching the usual life of such conduits; that a bridle path crossed the easement wearing down the surface; that ground contours are known to change by reason of rain and other erosion; that the telephone company had apparently given no attention to the conduit during this long period; and that while Greenman ''knew that poles and wires above the ground had been installed in the area of the telephone cable easement . . . he did not know that any underground cables had been installed.''

The record discloses that prior to the incident in question, one George E. Read, agent for the owner of a portion of the property, entered into a contract with respondent Greenman for cleaning the surface of the tract. The work involved clearing off brush and debris and pushing such material into a depressed area. According to Greenman, Read ''didn't give me any definite boundaries. He said to clean up the whole tract.'' Lot boundary lines were not marked at that time and the only parts of the subdivision then laid out were two roads. After Greenman had completed a portion of this work for

Read, another contract was made between Greenman and respondent Pilgrim, the latter having agreed with Read to purchase Lot 16 and portions of Lots 5 and 6. Greenman was use a bulldozer to ''straighten up the bank . . . to conform to use a bulldozer to ''straighten up the bank . . . to conform

Appellant claims that by reason of the bulldozer operation, two breaks were made in the telephone conduit and cables; Break No. 1 being about 5 feet north of Lot 5, and Break No. 2 being on Lot 16. As to the first break Greenman testified, ''I did not know it at the time,'' but learned of it ''sometime after I came back from Pilgrim's lot, later in the afternoon.'' Concerning Break No. 2, Greenman stated that just previous thereto, something was noticed that ''Looked like a piece of foundation . . . just barely visible.'' Pilgrim ''said it was old foundations'' and said to remove it. Several cuts ''of a few inches'' were then made which resulted in severing the conduit and cable, referred to as Break No. 2.

There is evidence by appellant's witnesses that the conduit was not ''covered very deep,'' in places being buried only ''a few inches from the surface.'' The deepest cut said to have been made by the bulldozer was from 5 to 8 inches. There was also evidence that it was the custom to bury such conduit from 18 inches to 3 feet; also that on private property it was not customary to make inquiries as to the exact location of utilities. As hereinbefore indicated, 21 years had elapsed since installing the conduit and a telephone official stated that after installation no further investigation is made unless and until some trouble is reported, although it is known that ground contours change by reason of erosion.

 Appellant complains that there was an abuse of discretion in the denial of leave to add a second cause of action for trespass. The respondent's brief notes that this motion, filed only a few days before trial, was without a supporting affidavit, and that the only ground alleged was that the amendment was ''necessary and a proper cause of action to be contained in plaintiff's First Amended Complaint.'' The original complaint had been amended once but without mention of any theory other than negligence, although the facts must have been as well known to plaintiff at that time as at the later date when the trespass amendment was offered.

The trial court in refusing to allow a change of theory a few days previous to trial doubtless considered these facts and the further fact that such a change might well prejudice defendants in the conduct of the trial. In any event the mat-

ter was within the discretion of that court, and under the circumstances shown by the record, no abuse of discretion has been made manifest.

■ It is also contended that the trial court was in error in granting a nonsuit in favor of the respondent Greenman. As to Break No. 1, the trial judge said: "The record is clear to the court that at the time he made that first cut he was working for Read, under Read's instructions, and he wasn't informed by anybody that the conduit was there. It was so close to the ground that it was unavoidable for him to hit it. . . . He didn't know he hit it until he was informed some time later that day. . . . So far as that cut is concerned, there is no testimony that that break was made by his bulldozer. He said he didn't know and nobody else saw him do it." In respect to Break No. 2, the trial court said: "The conduit was exposed. It was set right on top of the ground at the point where the break actually occurred. There was no negligence on the part of Greenman. Nobody had shown him this conduit. Nobody told him about it."

The trial court's observations as to the state of the evidence at the time the motion was made, are fully supported by the record. Moreover that court possessed the great advantage of having heard the witnesses in person, an opportunity denied to appellate tribunals. As in all such cases, a burden rested upon the plaintiff to establish some act of negligence on the part of the defendants. Obviously, if the negligence was shown to be that of the telephone company rather than that of the bulldozer operator, no case was made out. Whatever may have been the negligence of the defendant Pilgrim, or possibly of the seller Read who is not a party defendant herein, no error has been demonstrated in the granting of a nonsuit as to Greenman.

The further question of negligence on the part of the respondent Pilgrim, who was purchasing the property, seems to have been properly submitted to the jury under appropriate instructions containing no prejudicial error. A verdict in favor of Pilgrim was returned by the jury, and such verdict and the judgment based thereon find substantial support in the evidence.

The proposition that the theory of trespass should have been submitted to the jury has been disposed of in reference to the trial court's refusal to allow such an amendment to the pleadings. As stated in respondent's brief, "The issue of trespass was not in the case." Negligence was the only issue litigated,

and appellant's insistence that the negligence allegations should be considered mere surplusage and that trespass was the real issue, is without merit.

▮ Appellant also contends that "Pilgrim had neither a legal nor an equitable interest in the property at the time of the injuries," because of the fact that Pilgrim possessed merely a written reservation of lots on a then unrecorded subdivision, and did not obtain legal title until later. However, as noted in respondent's brief, Pilgrim had paid $2,000 on an irrevocable purchase agreement, had been shown the property on the ground and given the right of entry and possession. Under these circumstances it would appear that the contention may properly be regarded as specious rather than real. The trial court's reference to Pilgrim as the "owner", cannot be deemed of a prejudicial nature.

▮ Nor can the instructions in reference to easements and the duties of easement owners to keep the property in repair be considered prejudical. Considered as an entirety, the jury could hardly have been misled by the instructions given. No merit is found in any of appellant's points for reversal.

The judgments and order appealed from are affirmed.

White, P. J., and Drapeau, J., concurred.