[Civ. No. 41753. First Dist., Div. Two, Aug. 23, 1979.]

MICHAEL DEL ROULSTON, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
PACIFIC TELEPHONE & TELEGRAPH COMPANY et al.,
Defendants and Respondents.

150

**COUNSEL**

Boccardo, Blum, Lull, Niland & Bell and John C. Stein for Plaintiffs and Appellants.

Rankin, Oneal, Center, Luckhardt, Marlais, Lund & Hinshaw, Mark G. Hyde and Thomas P. Hansen for Defendants and Respondents.

## OPINION

**GREGG, J.**[*]—Plaintiffs Michael Del Roulston, a minor, by and through his guardian ad litem Carol A. Roulston, and Carol A. Roulston individually (appellants) appeal from a judgment entered upon a jury verdict denying them recovery in an action against defendants Pacific Telephone & Telegraph Company, a corporation, and Robert Lee Williams (respondents), for personal injuries sustained by the minor in an automobile-bicycle accident.

On October 3, 1974, at approximately 4 p.m., plaintiff minor (hereinafter Michael), a seven-year-old boy, was struck by an automobile driven by defendant Robert Lee Williams (hereinafter Williams) in the course and scope of his employment by Pacific Telephone & Telegraph Company. The accident occurred on Scott Boulevard, in the City of Santa Clara, in or near a crosswalk in front of the Scott Lane Grammar School (hereinafter school). Williams was driving northerly on Scott Boulevard which runs adjacent to the school and its grounds, which are not separated from Scott Boulevard by any fence, gate or other physical barrier. The front of the school faces Scott Boulevard, being separated from the roadway by a lawn. The school's playground is located to its rear and can be reached by way of a path alongside the school building.

Scott Boulevard, at the scene of the accident, is a four-lane street divided by a double yellow line. The northbound lanes, as they pass the school, are posted with a sign bearing the word "SCHOOL." There is a crosswalk crossing Scott Boulevard in front of the school. The posted speed limit was 35 miles per hour.

Williams testified he was familiar with the area in question, his work causing him to drive by it four or five times a day. Before the accident he knew the school was in session from 9 a.m. to 2:30-3 p.m., and that he had seen children in the lawn area in front of the school, but not using it for a play area.

Michael, on the day in question, had gone home after school, changed his clothes, and shortly before 4 p.m. left with a friend on their bicycles to play. Michael testified they went to the school playground; his friend testified they went to a vacant lot next to the school. In either case, tiring of playing, they started to return home. The friend's bicycle chain broke,

---

[*]Assigned by the Chairperson of the Judicial Council.

and Michael proceeded alone to cross Scott Boulevard either in or close to the crosswalk in front of the school. The evidence is conflicting whether he stopped or entered Scott Boulevard riding pretty fast.

Both Williams and Michael testified they did not see the other before the accident. Williams testified he was driving northerly on Scott Boulevard at 25 to 30 miles per hour, that he saw children on the grass in front of the school. He never saw Michael until impact, and while not sure, he assumed the impact occurred immediately before the crosswalk.

Other witnesses have Michael crossing both in and outside the crosswalk, not stopping before crossing, and estimating his speed at eight miles per hour.

An expert witness testified to stopping distances of a vehicle at 25 and 30 miles per hour, and to reaction time. He also, in answer to a hypothetical question, testified that "if a driver had been watching the street in front of him . . . he could have avoided a bicycle coming out or coming off the curb," assuming the auto's speed at 30 miles per hour and the bicycle's at eight miles per hour.

Appellants requested the trial court instruct the jury the prima facie speed limit was 25 miles per hour, based on Vehicle Code section 22352, subdivision (b)(2), which provides the prima facie speed limit is 25 miles per hour "When passing a school building or the grounds thereof, contiguous to a highway and posted with a standard 'SCHOOL' warning sign, while children are going to or leaving such school during opening or closing hours or during the noon recess period. Such prima facie limit shall also apply when passing any school grounds which are not separated from the highway by a fence, gate or other physical barrier while the grounds are in use by children and the highway is posted with a standard 'SCHOOL' warning sign."

The court declined to so instruct, and instead instructed the prima facie speed limit was 35 miles per hour. The issue on this appeal centers on the interpretation of the second sentence of the foregoing statute. Both sides agree there are no decisions interpreting the statute in question, and we have found none.

Appellants argue that the Legislature, in enacting the statute, must have had in mind judicial decisions imposing an increased duty on drivers in the vicinity of school grounds, citing *Lampton* v. *Davis Standard*

*Bread Co.,* 48 Cal.App. 116 [191 P. 710]; and *Frederiksen v. Costner,* 99 Cal.App.2d 453 [221 P.2d 1008]. *Lampton* held one driving adjacent to a school ground at an hour when "children might, with certainty, be expected to be using the street," had to use a greater degree of caution than under ordinary circumstances. *Frederiksen* did not involve a school ground, but, citing *Lampton,* held a greater degree of care is required of the driver of a vehicle when he knows a small child is at play in the area than in a case where a person of mature discretion is involved.

Respondents, to the contrary, urge the statute by its terms should be limited to times when children are likely to be coming from or going to school and when children are using school playgrounds during recess periods when drivers of vehicles might expect, with some certainty, children to be present, and that it is unreasonable to interpret it to be applicable night and day whenever children subject the front of the school to any use.

We find the following demonstrates the language of the statute in question is clear and not subject to judicial interpretation.

The statute by its terms applies to motorists on highways, other than state highways, when passing a school building or the grounds thereof contiguous to a highway posted with a standard "SCHOOL" warning sign under the following circumstances:

1. While children are going to or leaving such school during opening or closing hours or during the noon recess period.

2. When the school grounds are not separated from the roadway by a fence, gate or other physical barrier while the grounds are in use by children.

It appears obvious to us that circumstance one applies only when school is in session and whether or not there is a barrier between the school or its grounds. In circumstance two, it appears equally obvious it applies whether or not school is in session, whenever the grounds are in use by children and the school grounds are not separated from the roadway by a fence, gate or other physical barrier.

We, of course, in determining the legislative intent, must first turn to the words of the enactment themselves, construing them in context and keeping in mind the purpose of the statute (*Moyer v. Workmen's Comp.*

*Appeals Bd.,* 10 Cal.3d 222 [110 Cal.Rptr. 144, 514 P.2d 1224]).  ▆  If the language of the statute is plain and certain so that no doubt arises as to its meaning, a bare reading thereof is sufficient, and there is no need for construction (*Hidden Valley Municipal Water Dist.* v. *Calleguas Municipal Water Dist.,* 197 Cal.App.2d 411 [17 Cal.Rptr. 416]).

Simply because respondents argue the above interpretation is unreasonable we add that the obvious purpose of the statute is to protect children using school grounds. Schools come in many shapes and sizes and their grounds are differently used. The playgrounds, shops or outbuildings may be located next to one school building and separated from another, to the side of one, to the rear of another. The statute applies equally to all.

It must be presumed that school grounds are used for school purposes and that at one time or another and in one school or another children may be in any part of the school grounds. It is also a matter of common knowledge that children frequent and use school grounds when school is not in session and particularly when there is no fence or barrier around them.

In enacting the first sentence of the statute in question, the Legislature sensibly had in mind that while school is in session the children will be in classrooms or inside the school buildings and the statute should not apply. It undoubtedly also had in mind that school grounds that are not separated from the roadway by a barrier are an invitation to, and will be used by, children whether or not school is in session. Whether the statute should be effective on Saturdays, Sundays, vacation periods or after school hours, or be limited to times when playground areas are in use, certainly may be argued, but in the statute before us the Legislature has made no such limitations and we cannot add them under the guise of construction (*Mount Vernon Memorial Park* v. *Board of Funeral Directors & Embalmers,* 79 Cal.App.3d 874, 885 [145 Cal.Rptr. 275]; *Rich* v. *State Board of Optometry,* 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512]).

▆  Having concluded the 25-mile speed limit provided in Vehicle Code, section 22352, subdivision (b)(2), is applicable, we turn to the question whether instructing the jury the applicable prima facie speed limit was 35 miles per hour was prejudicial and calling for reversal.

Appellants argue if it appears that error in giving an instruction was likely to mislead the jury and thus become a factor in its verdict, it is prejudicial and ground for reversal.

Respondents call our attention to the fact the jury was instructed on the basic speed law telling them the test is whether or not the speed was greater than is reasonable or prudent having due regard for the weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons and property as provided in Vehicle Code, section 22350; that minors are not held to the same standard of care as adults (BAJI No. 3.35); and that ordinarily it is necessary to exercise greater caution for the protection and safety of minors than for adults (BAJI No. 3.38). Hence they urge the error is not prejudicial.

That the erroneous instruction is prejudicial we feel is mandated by the following. The basic speed law does not mention the proximity of schools as a factor in determining whether or not the speed is reasonable or prudent. Under the erroneous instruction the jury might reasonably have concluded that driving at 30 miles per hour Williams was driving 5 miles under the prima facie speed the court instructed was applicable and hence was being extra cautious. Lastly, at trial speed was a principal issue of fact argued by both sides.

It appearing that the erroneous instruction was likely to mislead the jury and become a factor in its verdict, it is prejudicial and requires reversal (*Henderson* v. *Harnischfeger Corp.,* 12 Cal.3d 663 [117 Cal.Rptr. 1, 527 P.2d 353]).

The judgment is reversed.

Taylor, P. J., and Miller, J., concurred.

A petition for a rehearing was denied September 21, 1979.