[No. B023012. Second Dist., Div. Seven. Feb. 25, 1988.]

COLICH & SONS et al., Cross-complainants and Appellants, v. PACIFIC BELL, Cross-defendant and Respondent.

COUNSEL

Joseph Ryan, Jr., Lana Feldman and Larry D. Stratton for Cross-complainants and Appellants.

Bart Kimball, John Keiser and Marlene Session Cooper for Cross-defendant and Respondent.

**OPINION**

**THOMPSON, J.**—This is an appeal by Colich & Sons et. al (Colich) from the dismissal of a cross-complaint against Pacific Bell (Pac Bell) for indemnity, comparative contribution and declaratory relief following the sustaining of a demurrer without leave to amend.

We hold that a defendant, such as Colich, consistent with the policy that limitation of liability provisions in a tariff are binding on the public generally, is barred from seeking equitable indemnity for ordinary negligence from a concurrently negligent telephone utility, even though the defendant is not a customer of the telephone utility but instead is a stranger. Nonetheless, we shall reverse the judgment in the instant case, because Colich may be able to amend its cross-complaint to seek recovery up to the allowed $10,000 on the ground of gross negligence, one of the express exceptions to the tariff.

On June 25, 1984, while excavating under a public intersection in El Segundo, Colich, the excavation subcontractor, allegedly struck and damaged Pac Bell's underground telephone cable resulting in an interruption of service to some Pac Bell customers, including United Air Lines (UAL). UAL sued Colich on negligence grounds for damages for lost business revenue and additional operating expenses. UAL alleged that Colich's

"severing . . . of said lines was negligent in that the phone company had marked in paint on the pavement the location of its underground facilities, but [Colich] so negligently performed the excavation as to disregard those markings" resulting in four days' "service interruption" of voice and data lines at UAL's regional reservations center.[1]

Colich cross-complained against Pac Bell, alleging that if the allegations of UAL's complaint were true, Pac Bell's "negligence or other tortious misconduct" in failing to perform its respective duties, obligations and warranties was the sole or concurrent cause of UAL's damages. Colich sought full equitable implied indemnity or, alternatively, partial indemnity apportioned on a comparative fault basis. Pac Bell, citing *Waters* v. *Pacific Telephone Co.* (1974) 12 Cal.3d 1 [114 Cal.Rptr. 753, 523 P.2d 1161] (*Waters*), demurred on the grounds that UAL as a matter of law could not sue Pac Bell directly for its telephone service interruption under the terms of a limitation of liability tariff filed with the Public Utilities Commission (PUC) and, therefore, Colich's derivative claim for indemnity and contribution was likewise barred. This appeal followed the dismissal of Pac Bell as a cross-defendant upon the trial court's sustaining of the demurrer without leave to amend.

## DISCUSSION

Colich alleges that it would amend its complaint to specifically allege that Pac Bell failed to adequately mark, identify or communicate the existence of the applicable telephone cables at the construction site. At issue is whether these amended facts will enable it to state a cause of action on the grounds that (1) the tariff does not apply to Pac Bell's failure and/or (2) Pac Bell's failure falls within an express exception to the tariff for gross negligence, willful misconduct, or violation of law.

█ In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [537 P.2d

---

[1] This suit (United Air Lines v. Colich, case No. SWC 78667) is one of three consolidated lawsuits filed as a result of the cable damage incident. In the lead suit, Pac Bell has sued Colich and others for damage to its facilities on grounds of negligence, trespass, inverse condemnation, and a statutory cause of action for violation of Public Utilities Code section 7952. (Pacific Bell v. Colich, case No. SWC 78660.) In addition, Computer Sciences Corporation has filed an action similar to UAL's for lost profits and general damages arising from the loss of its telecommunication services. (*Computer Sciences Corp.* v. *Colich & Sons, et al.,* case No. SWC 85955.)

865]; *Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117 [222 Cal.Rptr. 239].) The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. (*Von Batsch, supra.*) "It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory." (*Ibid.*) But it is not an abuse of discretion to sustain a demurrer without leave to amend if there is no reasonable possibility that the defect can be cured by amendment. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *Von Batsch, supra,* at pp. 1117-1118.) Plaintiff bears the burden of demonstrating that the trial court abused its discretion by showing in what manner it can amend its complaint and how that amendment will change the legal effect of its pleading. (*Id.,* at p. 1118.)

I.

*Applicability of the Tariff Provision Limiting Liability for Ordinary Negligence*

The PUC has been vested by the Legislature with broad supervisory and regulatory powers. (*Waters, supra,* 12 Cal.3d 1, 6.) Pac Bell as a public utility is subject to applicable provisions of the Public Utilities Code.[2] (§§ 216, 761.) It is required to file tariffs with the PUC covering the terms and conditions, including rates, classifications and attendant liabilities, under which it renders service. (§ 489.) "A public utility's tariffs filed with the PUC have the force and effect of law." (*Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co.* (1972) 26 Cal.App.3d 454, 457 [102 Cal.Rptr. 651]; see also *Dyke Water Co.* v. *Public Utilities Com.* (1961) 56 Cal.2d 105, 123 [14 Cal.Rptr. 310, 363 P.2d 326].)[3]

The tariff on limitation of liability filed with the PUC (2.1.14 rule No. 14), which is at issue here, is set forth in the margin.[4]　■　Colich does

---

[2] Unless otherwise stated all statutory references are to the Public Utilities Code.

[3] The PUC under various provisions of the code comprehensively regulates the rates of utilities within its jurisdiction and, in establishing rates, may abrogate private contracts between the consumers and the utility. (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 515, p. 3815.)

[4] The tariff on limitation of liability provides in pertinent part: "1. The provisions of this rule do not apply to errors and omissions caused by willful misconduct, fraudulent conduct or violations of law. [¶] 2. In the event an error or omission is caused by the gross negligence of the Utility, the liability of the Utility shall be limited to and in no event exceed the sum of $10,000. [¶] 3. Except as provided in 1. and 2. of this rule, the liability of the Utility for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in any of the services or facilities furnished by the Utility . . . shall in no event exceed an amount equal to the pro rata charges to the customer for the period during which the services or facilities are affected by the mistake, omission, interruption, delay, error or defect, provided, however,

not challenge the validity of the tariff provisions limiting liability for ordinary negligence to a credit allowance. Rather, Colich makes a twofold claim: the tariff does not apply to the facts of this case or, alternatively, even if it does apply, an issue of fact exists as to whether Pac Bell's conduct falls within the specific exemptions for "gross negligence" "willful misconduct" or "violation of law."[5] We disagree.

Colich's contention that it can properly state a cause of action for damages under section 2106[6] must be examined in the context of, and in harmony with, section 1759.[7] Although section 2106 may authorize a private person to bring an action against public utilities, it must still be construed to harmonize with section 1759, which deprives the superior court of jurisdiction to reverse or annul PUC decisions. (*Waters, supra,* 12 Cal.3d at pp. 3-4; *Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 681 [187 Cal.Rptr. 219].)

Our Supreme Court has recognized that damage suits brought against a telephone company under section 2106 must not be used as a device to avoid or interfere with established regulations or practices of the PUC. (*Waters, supra,* 12 Cal.3d 1; see also *Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 811 [117 Cal.Rptr. 423, 528 P.2d 31].) In *Waters,* our Supreme Court held that "in order to resolve the potential

---

that where any mistake, omission, interruption, delay, error or defect in any one service or facility affects or diminishes the value of any other service said liability shall include such diminution, but in no event shall the.liability exceed the total amount of the charges to the customer for all services or facilities for the period affected by the mistake, omission, interruption, delay, error or defect."

[5] Although the tariff also contains an exception for fraudulent conduct, Colich has not pleaded facts showing fraud and does not even contend that it could amend to state a cause of action on that ground.

[6] Section 2106 provides: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."

[7] Section 1759 provides: "No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases."

conflict between sections 1759 and 2106, the latter section must be construed as limited to those situations in which an award of damages would not hinder or frustrate the [PUC's] declared supervisory and regulatory policies." (12 Cal.3d. at p. 4.) The rationale was that the PUC "has approved a general policy of limiting the liability of telephone utilities for ordinary negligence to a specified credit allowance, and has relied upon the validity and effect of that policy in exercising its rate-making functions." (*Id.,* at p. 10.)

■ Since "[s]ection 2106 can only be utilized when it will not interfere with or obstruct the [PUC] in carrying out its own policies" (*Barnett* v. *Delta Lines, Inc, supra,* 137 Cal.App.3d at p. 681), UAL can only get a credit allowance and cannot state a cause of action for negligence against Pac Bell for UAL's business loss due to interruption of service. Colich, however, argues that the tariff limitation on liability should not apply to bar its cross-complaint for indemnification because it is a stranger to the contract, not a customer.

■ But, the tariff limitation on liability has been held to apply to third parties as well as to the utility's customers. (*Trammel* v. *Western Union Tel. Co.* (1976) 57 Cal.App.3d 538, 551-553 [129 Cal.Rptr. 361].) In *Trammel,* the court rejected the argument that a limitation of liability provision in a tariff did not apply to a third party who had no knowledge of the provision and had not assented to it.[8] The court explained that the limitation of liability provisions "are binding on the public generally" because they "are an inherent part of the established rates and have the force and effect of law." (*Id.,* at p. 551.)

The parties have not cited, nor has our research discovered,[9] any cases wherein a third-party defendant sought equitable indemnity or contribution from a telecommunications utility who was a concurrent tortfeasor for damages arising out of interruption of service. ■ Nonetheless, the same rationale that led the *Trammel* court to conclude that the limitation of liability provisions necessarily bound the third-party beneficiary plaintiff therein, who also was "not a party to the contract for service with the public utility" (57 Cal.App.3d at p. 553) applies equally to the "third party" defendant herein. Because "California cases hold public utility tariffs to have the force and effect of law" and "reasonable rates are in part

---

[8] In *Trammel,* the addressee of a telegram allegedly lost his job because the telegram recalling him to work was negligently delivered to the wrong person.

[9] For example, the nationwide cases cited in the Annotation (1975) 67 A.L.R.3d 76, do not cover liability to third parties.

dependent upon limitation of liability" (*ibid.*), we similarly conclude that these provisions apply to bar a negligence cross-complaint by Colich for equitable indemnity.

Colich cannot avoid the application of the tariff by characterizing the alleged negligent act of Pac Bell as "not in the facility or in the delivery of service but in the ancillary act of locating or otherwise marking lines at a construction site." Pac Bell is not acting as a "contractor" just because it attempts to locate or mark its cable. Such marking is part of Pac Bell's provision of telephone service which is undertaken to protect the integrity of its telecommunications network by assisting contractors to locate Pac Bell's substructure in order to avoid damaging the cables and thereby interrupting service.

Since UAL's damages for economic loss arise exclusively from an interruption to its telephone service, the economic damages for which Colich seeks indemnity are within the express terms of the tariff. The tariff covers such damages arising from ordinarily negligent "mistakes, omissions, interruptions, delays, errors or defects in *any* of the services or facilities furnished by the Utility." (Italics added.) This broad language applies generally to cases of negligent service interruption. It is the impact of the error or omission, not the cause, which is relevant.[10] We decline to shift the nature of the inquiry to the character of Pac Bell's act of ordinary negligence to exclude any application of the tariff.[11] ▮ We are mindful of our Supreme Court's warning in *Waters* that "[w]ere the courts permitted to reappraise and reinterpret the language of [PUC-] approved tariff schedules in the guise of 'judicial construction,' the supervisory and regulatory functions of the [PUC] . . . could easily be undermined." (12 Cal.3d at p. 10.)

---

[10] In *Waters,* the plaintiff, a real estate broker, complained of a wide variety of acts causing disruption of service, including "lack of proper maintenance service, incompleted calls, unauthorized removal of phones, improper installation of phones, and a variety of other frustrating experiences specified in her complaint." (12 Cal.3d. at p. 5.) The court did not address the nature of the telephone company's specific activities which led to the plaintiff's claim for damages for inadequate telephone service but held that the entire claim was barred by the tariff limitations of liability. Indeed, it indicated that part of the rationale underlying the PUC's 1970 policy decision (Dec. No. 77406, 71 Cal.P.U.C. 229) that telephone utilities should have at least partial liability for "gross negligence" but be limited to specified credit allowances for errors or omissions involving ordinary negligence was that "errors and service interruptions were inevitable in the operation of a telephone utility" and "it may be impossible to determine the cause of a service interruption or failure." (*Waters, supra,* at p. 8, fn. 7.)

[11] The character of the act insofar as it involves an express exception from the tariff limitation of liability rules for gross negligence, willful misconduct or violation of law will be discussed, *infra.*

 Accordingly, we hold that, under the circumstances herein, the tariff can apply to bar a defendant from seeking equitable indemnity for ordinary negligence from a concurrently negligent telephone utility.

We are not persuaded to the contrary by Colich's contention that it is entitled to state a cause of action for equitable indemnity for Pac Bell's ordinary negligence regardless of the tariff restriction under the principles set forth in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*).

 *AMA* modified the equitable indemnity doctrine "to permit, in appropriate cases, a right of partial indemnity, under which liability among multiple tortfeasors may be apportioned on a comparative negligence basis." (*Id.,* at p. 583.) "*AMA*, however, does not purport to make a rule for all seasons." (*Commercial Standard Title Co. v. Superior Court* (1979) 92 Cal.App.3d 934, 940 [155 Cal.Rptr. 393].) "*AMA* makes not a rule of general application but a rule riddled with exceptions. Partial indemnity is permitted only in appropriate cases." (*Id.,* at p. 941.)[12]

 Although a defendant would ordinarily have a right to file a cross-complaint for indemnity against a concurrent tortfeasor, "there can be no indemnity without liability." (*Munoz v. Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400].) "In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." (*Ibid.*) But here, Pac Bell cannot be held jointly and severally liable because its liability is strictly limited by the tariff which has the force of law. To allow Colich to cross-complain for damages for ordinary negligence herein would thwart the undisputed general PUC policy to limit the telephone utility's liability for ordinary negligence for service interruptions and hinder its rate-making functions.

Accordingly, we conclude that such a policy dictates that a defendant should be barred from claiming comparative equitable indemnity from a telephone company for such negligent service interruption.[13]

---

[12]*AMA* explicitly recognized that there are "a number of significant exceptions" to the general rule. (*AMA, supra,* 20 Cal.3d at P. 607, fn. 9.) Thus, for example, the third party tortfeasor does not have a right to equitable indemnity from a concurrent tortfeasor who is an employer when an employee is injured in the scope of employment (Lab. Code, § 3864; *City of Oakland v. Delcon Associates* (1985) 168 Cal.App.3d 1126, 1128-1129 [214 Cal.Rptr. 734]) or who has entered into a good faith settlement (*AMA, supra*; Code Civ. Proc., § 877.6 subd. (c).)

[13]We reject Colich's claim that its equitable indemnity suit is proper because the utility's negligent acts are unconnected with proper PUC concerns in exercising its ratemaking func-

Moreover, such a result does not offend equity. In *Waters,* for example, in upholding the provisions of the tariff at issue herein, our Supreme Court cited with approval the following language from *Cole* v. *Pacific Tel. & Tel. Co.* (1952) 112 Cal.App.2d 416, 419 [246 P.2d 686]: ██ " '[A] public utility, being strictly regulated in all operations with considerable curtailment of its rights and privileges, shall likewise be regulated and limited as to its liabilities. In consideration of its being peculiarly the subject of state control, "its liability is and should be defined and limited." [Citation.] There is nothing harsh or inequitable in upholding such a limitation of liability when it is thus considered that the rates as fixed by the [PUC] are established with the rule of limitation in mind. Reasonable rates are in part dependent upon such a rule.' " (*Waters, supra,* 12 Cal.3d at p. 7.)

██ Inevitably, whenever one concurrent tortfeasor is insolvent or immunized, either partially or completely, from liability, the remaining tortfeasors must pay more than an amount measured by their proportionate responsibility for the injury. (See *AMA, supra,* 20 Cal.3d at p. 587; Adler, *Allocation of Responsibility After American Motorcycle Association v. Superior Court* (1978) 6 Pepperdine L.Rev. 1, 21.)[14] ██ Moreover, Pac Bell is not granted immunity from all negligent acts. The provisions are limited in scope. The tariff limitation of liability provision is only applicable to cases of

---

tions. *Stepak* v. *American Tel. & Tel. Co.* (1986) 186 Cal.App.3d 633 [231 Cal.Rptr. 37], cited by Colich, is distinguishable. Like *Waters,* but unlike *Stepak* which involved the subject of safeguarding minority investor interests, limitation of liability of telephone utilities for ordinary negligence is addressed by PUC regulation and has been the proper subject of declared supervisory and regulatory policies.

*Societa per Azioni de Navigazione Italia* v. *City of Los Angeles* (1982) 31 Cal.3d 446 [183 Cal.Rptr. 51, 645 P.2d 102], is also inapposite. There the city's tariff limitation was void because the Tort Claims Act denied the city the power to enact such an ordinance abridging statutory liabilities. In contrast, here, the tariff limitation has been approved by the PUC and upheld by the Supreme Court as proper. The fact that public entities are liable for implied comparative indemnification where a basis for liability is provided in the Tort Claims Act (see *E. L. White* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 511 [146 Cal.Rptr. 614, 579 P.2d 505]) does not warrant a conclusion that telephone utilities must be liable for comparative indemnification despite their immunity.

[14]*AMA* still retained joint and several liability so that each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury. (20 Cal.3d at p. 582.) In *AMA* our Supreme Court held that a "tortfeasor may not escape this responsibility simply because another act—either an 'innocent' occurrence such as an 'act of God' or other negligent conduct—may also have been a cause of the injury." (*Id.,* at p. 586.) "[T]he fact that one of the tortfeasors is impecunious or otherwise *immune* from suit does not relieve another tortfeasor of his liability for damage which he himself has proximately caused." (*Id.,* at p. 587, italics added.)

economic damage involving the delivery of telephone service.[15] If Colich was not negligent, it will, of course, have no liability.[16]

More importantly, from the viewpoint of policy considerations, Colich as an excavation contractor is in a better position than Pac Bell to insure itself against liability for the damages herein.[17]

---

[15] Although the limitation of liability provisions in effect immunize Pac Bell from economic damages for ordinary negligence resulting in interruptions of service, they do not apply to cases involving negligent infliction of personal injury and property damage. (see, e.g., *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49 [192 Cal.Rptr. 857, 665 P.2d 947] [personal injury cause of action vs. telephone company when third party driver struck negligently placed telephone booth]; *Roulston* v. *Pacific. Tel. & Tel. Co.* (1979) 96 Cal.App.3d 149 [158 Cal.Rptr. 43] [personal injury cause of action due to negligent driving by telephone company driver]; *Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650 [136 Cal.Rptr. 203] [personal injury cause of action where subcontractor's employees injured at construction site on telephone company's property]; *Carr* v. *Pacific Tel. Co.* (1972) 26 Cal.App.3d 537 [103 Cal.Rptr. 120] [wrongful death cause of action for telephone company employees negligently removing tree from telephone lines].) Indeed, the issue of limitation of liability tariff provisions was never even raised in these cases obviously because the utility as well as the courts recognized tariff limits were not applicable.

[16] The burden rests on UAL in this action and on Pac Bell in its consolidated action for property damage to the cable to establish some act of negligence on Colich's part. Obviously, if the negligence is shown to be that of Pac Bell alone, neither UAL nor Pac Bell will be able to recover from Colich. (*Associated Telephone Co.* v. *Greenman* (1952) 111 Cal.App.2d 193, 197 [244 P.2d 15]; see also Annot. (1976) 73 A.L.R.3d 987, 996-1000, § 4.) If the damage was caused by ordinary negligence on the part of both Pac Bell and Colich, Colich can still raise the tort defense of comparative negligence in the suit by Pac Bell under the principles of *Li* v. *Yellow Cab. Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. Moreover, Colich will be entitled to set off the amount of UAL's credit allowance in the UAL suit. (Cf. *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842 [150 Cal.Rptr. 888, 587 P.2d 684].)

[17] In *Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, 59, footnote 14, the court noted that "there are no policy considerations which weigh against imposition of liability under the circumstances presented by this case." In addition to noting that the plaintiff therein suffered "serious" personal injury, the court pointed out that "imposition of liability would not be unduly burdensome to defendants given the probable availability of insurance for these types of accidents which [the utilities] themselves maintain do not recur with great frequency." (*Id.,* at p. 60, fn. 14.)

In contrast, in *Waters,* the court specifically noted the problem of placing the burden of insurance against damages for services interruption on the telephone utility. (12 Cal.3d at p. 6, fn. 5, see also p. 9., fn. 7.) The *Waters* court pointed out that the PUC had taken into account for ratemaking purposes the telephone company's limited liability for acts of ordinary negligence which " 'relieve[s] the [utility] of the expense of insuring itself against liability for damage.' " (12 Cal.3d at p. 6, fn. 5.)

Moreover, the *Waters* court further stressed that, as the hearing examiner had pointed out in the 1970 PUC decision (Dec. 77406, 71 Cal.P.U.C. 229), there was no liability insurance presently available to insure against service errors and, therefore, if a change in the liability rule resulted in greater payouts, the money would have to come from the utility's revenues and would result in higher rates to the public as a whole. (*Waters, supra,* 12 Cal.3d. at p. 6, fn. 5.) Hence, Colich as a contractor engaged in this specific business activity of highway excavation can more readily insure itself against the risk of severing cables and resultant liability as a cost of business.

Despite this, Colich argues that California policy generally disfavors contractual limitations of liability. ■ But "general principles which might govern disputes between private parties are not necessarily applicable to disputes with regulated utilities." (*Waters, supra,* 12 Cal.3d at p. 10) We therefore conclude that Colich cannot state a cause of action against Pac Bell for ordinary negligence.[18]

## II.

### *Exceptions to Tariff*

We next turn to the question of whether a cause of action has been or can be stated under an exception to the tariff. ■ Colich argues it can state a cause of action for gross negligence, willful misconduct, or violation of law if granted leave to amend its original complaint to plead the additional facts that Pac Bell failed to properly locate or adequately mark its underground telephone cables.

In support of its position, Colich relies on PUC General Order 128, section 17.7. That order provides: "Each party operating or owning facilities shall, upon request, provide information as to location of its underground facilities to any other party contemplating underground construction, or work, in the vicinity thereof. Provision of such information by a party will not relieve such other party of his responsibility to locate accurately such underground facilities and to exercise reasonable care during construction or work. If at any time damage or interruption to existing facilities should occur, said other party is enjoined immediately to report such damage to the party owning such damaged or interrupted facilities."

### A. *Gross Negligence*

The tariff expressly provides that a party may recover damages up to $10,000 for gross negligence of the telephone utility. This exception to the credit allowance limitation of liability was adopted by the PUC in its 1970 decision, following an extensive investigation of limitation of liability issues. (Dec. 77406, 71 Cal.P.U.C. 229)

---

[18] In discussing this tariff limitation on liability, the *Waters* court specifically noted that both the California and United States Supreme Courts "have acknowledged that considerations of public policy which might be applicable to disputes between private parties (see, e.g. Civ. Code, § 1668) 'are not "necessarily applicable to provisions of a tariff filed with, and subject to the pervasive regulatory authority of, an expert administrative body." ' " (*Waters, supra,* 12 Cal.3d at at p. 6, fn. 5.)

The PUC recognized that definitions of the term "gross negligence" in other situations by California courts were applicable. (71 Cal.P.U.C. at pp. 232-233.) ■■ In *Van Meter* v. *Bent Construction Co.* (1956) 46 Cal.2d 588, 594 [297 P.2d 644], cited by the PUC, "gross negligence" is defined as either the "want of even scant care or an extreme departure from the ordinary standard of conduct." (Accord: *Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 138 [181 Cal.Rptr. 732, 642 P.2d 792].) Gross negligence falls short of a reckless disregard of consequences and differs from ordinary negligence only in degree and not in kind. (*Gore* v. *Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 197 [167 Cal.Rptr. 881].) Thus, negligence and gross negligence are relative terms, proportional to the risk. (*Id.*, at p. 198.)

In *Donnelly* v.*Southern Pacific Co.* (1941) 18 Cal.2d 863, 871 [118 P.2d 465], quoted by the PUC in support of the creation of this exception (71 Cal.P.U.C. at p. 232), our Supreme Court explained that the "distinction" between ordinary and gross negligence "amounts to a rule of policy that a failure to exercise due care in those situations where the risk of harm is great will give rise to legal consequences harsher than those arising from negligence in less hazardous situations."

■■ Here, the order imposed a specific positive duty on Pac Bell to attempt to locate its underground cable at Colich's request. That order, as Pac Bell concedes, has the force and effect of law. (See § 702; *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 801 [285 P.2d 912].) Government Code section 4216 codifies this rule and sets forth specific procedures for both the utility and the contractor to follow. Although this section was not operative at the time of the cable severance herein, it does indicate legislative recognition of the hazardous nature of excavation in an urban street. Moreover, Colich may be able to prove at trial that this current Government Code section reflects industry standards in existence in June 1984.

Furthermore, in the PUC decision, the hearing examiner gave three examples of types of situations which would constitute "gross negligence" (71 Cal.P.U.C. at pp. 242-243). The hearing examiner explained that in all those examples "not only was there negligence but the specific consequences of the particular acts of negligence were known to employees of the telephone companies before the negligence occurred." (*Id.*, at p. 244.) The situation herein shares that same characteristic. Since the binding general order specifically imposed duties on both the utility and the contractor in order to

avoid damage to underground utility cables, Pac Bell cannot claim that its "spotters" were unaware of the consequences of negligently failing to locate, mark or identify the subsurface cable and instead giving the "go-ahead" to the excavator when there actually still was an underground cable there.[19]

 Whether there has been such a lack of care as to constitute gross negligence is generally a triable question of fact. (*People* v. *Markham* (1957) 153 Cal.App.2d. 260, 273 [314 P.2d 217]; see also *Garrison* v. *Pacific Northwest Bell* (1980) 45 Ore.App. 523 [608 P.2d 1206, 1212].) We cannot rule out the possibility that Pac Bell's behavior at the site was an extreme departure from the ordinary standard of conduct.

 It is an abuse of discretion to sustain without leave to amend a demurrer to an original complaint, unless the complaint shows on its face that it is incapable of amendment. (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1].) "Liberality in permitting amendment is the rule, not only where a complaint is defective as to form but also where it is deficient in substance where, as here, a fair prior opportunity to correct the substantive defect has not been given." (*Von Batsch* v. *American Dist. Telegraph Co., supra,* 175 Cal.App.3d at p. 1119.) If there is any reasonable possibility that a plaintiff can state a good cause of action it is error to deny leave to amend. (*Okun* v. *Superior Court* (1981) 29 Cal.3d 442, 460 [175 Cal.Rptr. 157, 629 P.2d 1369].)

 Accordingly, we hold that Colich should be granted leave to amend to cross-complain for equitable indemnity up to $10,000 on the grounds of gross negligence.

## B. *Willful Misconduct*

Willful misconduct constitutes an express exception to the tariff limitation permitting unlimited recovery in a damage action. Willful misconduct means something different from and more than negligence, however gross. (*Bains* v. *Western Pacific R.R. Co.* (1976) 56 Cal.App.3d 902, 906 [128 Cal.Rptr. 778].) Where a party relies on willful misconduct there are sound reasons why he should be required to state facts more fully than in ordinary negligence cases so that it may be determined whether they constitute willful misconduct rather than negligence or gross negligence.

---

[19] In its brief, Colich claims that the evidence will show that all lines identified by Pac Bell's spotters at excavation were actually located by Colich and that the cutoff of service to Pac Bell's customers occurred when Colich cut through a wall of lines after it had been given the "go-ahead" by the spotter.

(*Snider* v. *Whitson* (1961) 184 Cal.App.2d 211, 214 [7 Cal.Rptr. 353]). Since Colich's original cross-complaint does not meet this standard, the issue is whether Colich can state such a cause of action if permitted to amend to allege the additional facts alleged in its brief.

Colich points to the violation of general order 128. Yet the mere failure to perform a statutory duty is not alone willful misconduct. (*Porter* v. *Hofman* (1938) 12 Cal.2d 445, 448 [85 P.2d 447].) Willful misconduct has been defined as meaning intentional, wrongful conduct done either with knowledge that serious injury probably will result or with a wanton and reckless disregard of the possible result. (*Reuther* v. *Viall* (1965) 62 Cal.2d 470, 475 [42 Cal.Rptr. 456, 398 P.2d 792] [definition for purpose of guest statute].)

Three elements are necessary to raise a negligent act to the level of willful misconduct: actual or constructive knowledge of the peril to be apprehended; actual or constructive knowledge that injury is a probable as opposed to a possible result of the danger; and a conscious failure to act to avert that peril. (*Bains* v. *Western Pacific R.R. Co., supra,* 56 Cal.App.3d at p. 905.) The first two elements are met here. Pac Bell certainly could have anticipated this particular accident from its employees negligently failing to mark or identify the location of its cable. Nonetheless, it cannot be held liable for willful misconduct unless its conduct amounts to wantonness as opposed to a mere unintentional failure to perform its duty. (*Id.,* at p. 906.)

 Ordinarily whether an action constitutes willful misconduct is a question of fact (*Reuther* v. *Viall, supra,* 62 Cal.2d at p. 475.) But here, assuming the truth of the proposed allegations in its brief, Colich cannot show an intentional, conscious act of misconduct. Accordingly, since Colich does not allege some conscious act or omission, it cannot state a cause of action for willful misconduct. (See 71 Cal.P.U.C. 229, 237-239 [examples 1, 2, & 4 of misconduct as purposeful, knowing, willful]; cf. Gov. Code, § 4216, subd. (j) [knowingly and willfully]; see also *Olson* v. *Mountain States Tel, & Tel. Co.* (1978) 119 Ariz. 321 [580 P.2d 782] [intentional within meaning of willful not shown by a series of negligent acts]; Comment, *Private Damage Actions Against Telephone Companies for Inadequate Service* (1975) 9 U.S.F. L.Rev. 561, 580-581, fn. 85; Annot., *supra,* 67 A.L.R.3d 76, 127-129, § 16[b].)

## C. *Violation of Law*

Nor can Colich state a cause of action for the tariff exception for "violation of law" by amending to add the allegations set forth in the margin.[20] Colich basically claims that Pac Bell failed to "properly" locate or communicate adequate information concerning the location of its underground telephone cables. Colich does not claim that Pac Bell refused or otherwise failed to comply with the order. Rather than noncompliance, the purported violation here consists solely of negligence in complying.

We recognize that general order 128 imposes a direct, positive duty on Pac Bell to assist in locating cables upon request and a utility must comply with every order. (§ 702.) But that order also expressly provides that Pac Bell's duty does "not relieve" the contractor of its duty and responsibility to "accurately" locate the cable.

We are not persuaded that the exception to the tariff limitation of liability for illegal conduct was meant to encompass every negligent failure in carrying out the type of order involved herein.[21] We believe that this exception, like the exceptions for willful and fraudulent conduct which also allow unlimited recovery in a damage action, is intended to apply to intentional torts. The language in the PUC decision contrasts the exceptions for willful, fraudulent and illegal conduct with the limited liability for ordinary negligence and all the illustrative examples given by the hearing examiner in-

---

[20] Colich states it will, if granted leave to amend, add the following allegations to its cross-complaint: "Cross-complainant alleges that cross-defendant, Pacific Bell, was obligated to act in accordance with law, including but not limited to, rules promulgated by the Public Utilities Commission.

"Pacific Bell violated law, including but not limited to General Order 128 of the Public Utilities Commission, by failing to identify the location of its telephone lines even though said general order imposed an affirmative legal duty upon Pacific Bell to do so. Due to the failure by Pacific Bell, its employees, and agents, to properly identify or mark the telephone lines upon the pavement at the construction site, or to communicate the proper location of all its communications lines, cross-complainants were not, as contractors conducting excavation, properly informed.

"If proven at trial that cross-complainant while thus excavating, severed communications lines, such severance would be a proximate result of the failure of Pacific Bell and/or its employees, to identify and notify Colich of the location of such lines. All damages, if proven to exist by any consolidated plaintiff [are] the proximate result of said failure by Pacific Bell."

[21] Colich's reliance on *Pierce* v. *Pacific Gas & Electric Co.* (1985) 166 Cal.App.3d 68 [212 Cal.Rptr. 283, 60 A.L.R.4th 709], is misplaced. Contrary to Colich's claim, the *Pierce* court did not determine that the failure to comply with a general order constituted a "violation of law" and thereby fell within the express exception for limitation of liability under the tariff provisions herein. The *Pierce* court did not discuss the phrase "violation of law." In fact, it specifically recognized that the PUC has the power to limit the liabilities of utilities subject to PUC regulation and supervision but merely concluded that it had not done so in the particular rule at issue there. (*Id.,* at pp. 77-78.) Here, the PUC has so exercised its power in rule 14 to limit Pac Bell's (and other telephone companies') liabilities for negligent interruption of service.

volve intentional conduct. (See 71 Cal.P.U.C. 229, 237-239.) Moreover, such a construction is consistent with the PUC policy of limiting liability for ordinarily negligent service interruption to a credit allowance and liability for grossly negligent service interruption to $10,000. Furthermore, a contrary construction would be inconsistent with the *Waters* decision and rationale.[22]

Accordingly, we conclude that Colich cannot amend to state a cause of action for unlimited recovery due to violation of law.

The judgment is reversed with directions to allow Colich to amend its cross-complaint to state a cause of action for gross negligence in accordance with the views expressed herein. Colich shall recover its costs on appeal.

Lillie, P. J., and Johnson, J. concurred.

Appellants' petition for review by the Supreme Court was denied May 18, 1988.

---

[22] Although the Supreme Court in *Waters* never addressed the specific question of whether the alleged conduct therein could be construed to fall within the exception for "violation of law," it implicitly indicated to the contrary. Section 451 is a statutory provision which requires the telephone utility to provide "adequate" service to all users. In *Waters,* the plaintiff real estate broker sought damages for the utility's alleged failure to furnish adequate telephone service as required by section 451. The Supreme Court upheld a partial summary judgment limiting recovery to a credit allowance. The Court of Appeal decision in *Waters,* adopted by the dissent, had relied on the argument that the utility's conduct constituted an "unlawful" violation of that section. (12 Cal.3d at p. 16 (dis. opn. of Mosk, J.).) The *Waters* majority rejected the broker's claim of negligent violation of that statute and held, instead, that the utility's liability was limited to the credit allowance set forth in the tariff. (12 Cal.3d at pp. 10-12.) Moreover, elsewhere in the opinion, *Waters* apparently disallowed the operation of Civil Code section 1668 so far as it provided for a negligent violation of law. (*Id.,* at p. 6, fn. 5; see also 9 U.S.F. L.Rev., *supra,* 561, 577.)